UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MATRIX GROUP LIMITED, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:04CV00126 ERW |
| ) | |
| RAWLINGS SPORTING GOODS CO., INC. ) | |
| and K2, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court upon Plaintiff's Motion for Attorneys' Fees and Costs [doc. #210] and Plaintiff's Motion for Bill of Costs [doc. #216].

**I.    BACKGROUND**

This case concerns a certain License Agreement ("Agreement"), pursuant to which Rawlings Sporting Goods Company, Inc. ("Rawlings") granted Matrix Group Limited, Inc. ("Matrix") an exclusive license to use certain Rawlings trademarks in connection with the manufacture, sale, distribution, advertising, and promotion of certain sporting goods products. The Agreement contains, among other items, certain noncompete provisions which have been at issue in this case. In March 2003, K2, Inc. ("K2") acquired Rawlings, making Rawlings its subsidiary corporation. Later that year, in September 2003, K2 acquired another company, Worth, Inc. ("Worth"). This acquisition, along with certain subsequent actions, prompted Matrix to file suit for breach of contract against Rawlings in the United States District Court for the District of Maine. At that time, Matrix requested preliminary injunctive relief to enjoin any further breach of the Agreement by Rawlings. Soon after Matrix filed suit in Maine, Rawlings filed suit against Matrix in this Court for breach of contract.

1

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Subsequently, the Maine case was transferred to this Court, where the two cases were consolidated. At that time, Matrix added claims against Rawlings and K2 for tortuous interference and violations of the Florida Deceptive Trade Practices Act, and the parties were realigned to make Matrix the plaintiff in the case. After certain matters were disposed of upon the parties' motions for summary judgment, the case proceeded to trial. On May 9, 2005, at the conclusion of a five-day jury trial, a verdict was entered in favor of Matrix and against Rawlings on the breach of contract claims.[1] A verdict was also entered in favor of Matrix and against K2 on the tortuous interference claim.

## II. DISCUSSION

Matrix requests an award of various attorneys' fees and costs it has incurred in connection with this litigation. Matrix seeks to recover for fees paid to three firms: Brann & Isaacson ("B&I"), Rabbitt, Pitzer, & Snodgrass ("RPS"), and Hinckley AllenSnyder ("HAS"). First, Matrix has filed a Motion for Attorneys' Fees and Costs, in which it argues that it is entitled to recover certain fees and costs pursuant to Paragraph 7.7 of the Agreement. In this Motion, Matrix seeks $510,315.25 in attorneys' and paralegal fees,[2] $16,422.41 in related disbursements,[3] and $1,500.00 in costs.[4] Defendants have made numerous objections to Matrix's request, and they argue that any award

---

[1] The jury's award was subsequently reduced when the Court granted Rawlings's Motion for Judgment Notwithstanding the Verdict. *See* July 27, 2005 Order [doc. #237].

[2] This number represents the combined attorneys' and paralegal fees from B&I ($392,162.25), RPS ($49,533.50), and HAS ($68,619.50).

[3] Matrix contends that it is entitled to recover expenses and disbursements billed to it by counsel. This number represents expenses and disbursements from B&I ($15,392.99), RPS ($425.35), and HAS ($604.07).

[4] This number represents costs for the time spent by Matrix's expert at court on May 5, 2005, the day she testified. The expert was in court for six hours at a rate of $250.00 per hour. Rawlings has not objected to this request.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

should be reduced by at least $225,409.49. Second, in its Reply in Support of the Motion for Attorneys' Fees and Costs, Matrix includes a supplemental request for $31,279.00 in fees associated with its post-trial work in this case. Defendants have not objected to this supplemental request. Finally, Matrix has filed a Motion for Bill of Costs, in which it requests that certain costs be taxed to Defendants pursuant to 28 U.S.C. § 1920. Defendants have not objected to Matrix's Motion for Bill of Costs.

    A.    <u>Motion for Attorneys' Fees and Costs</u>[5]

Under Delaware law,[6] "a court may not order the payment of attorney's fees as part of costs to be paid by the losing party unless the payment of such fees is authorized by some provision of a statute or contract." *Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 370 (Del. Supr. Ct. 1982). *See also, e.g.*, *Northwestern Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 44 (Del. 1996) (enforcing attorneys' fees provision in hold-harmless agreement); *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 824 (Del. 1992) (enforcing attorneys' fees provision in indemnity agreement). When such fees are authorized by statute or contract, a court should independently evaluate the reasonableness of the fees being sought. *See Council of the Wilmington Cond. v. Wilmington Ave. Assoc.*, 1999 WL

---

[5]Matrix has provided a "Compilation Fees, Costs, and Expenses: Invoices In-Hand as of May 18, 2005," a three-inch binder which contains detailed invoices reflecting the fees and costs incurred in this matter.

[6]Fee-shifting contractual provisions are interpreted in accordance with the state law governing their interpretation. *See, e.g.*, *Orion Fin. Corp. of South Dakota v. Am. Foods Group, Inc.*, 281 F.3d 733, 745 (8th Cir. 2002) (applying South Dakota law). The parties agree that Delaware law governs the Agreement. Therefore, the Court looks to Delaware law in interpreting the fee-shifting provision at issue in this case.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1223792, at *3 (Del. Supr. Ct. Nov. 3, 1999) (unpublished)[7] (contract case) (court must independently evaluate reasonableness of fees sought; looking to factors set forth in Del. Prof. Cond. R. 1.5(a)) (citing *General Motors Corp. v. Cox*, 304 A.2d 55, 57 (Del. Supr. Ct. 1973) (statutory fee-shifting case)).[8] Pursuant to the Agreement between Matrix and Rawlings,

> [i]f it is adjudged by a court of competent jurisdiction that one party has materially breached th[e] Agreement, the non-breaching party shall be entitled to reasonable attorney's fees and costs from the other party.

Pl.'s Tr. Ex. P-1 at ¶ 7.7. The Court interprets this contract provision according to the ordinary meaning of the words in the contract. *See Citadel Holding Corp.*, 603 A.2d at 824 ("When construing a contract, and unless a contrary intent appears, we will give words their ordinary

---

[7]In the Eighth Circuit, unpublished opinions are decisions which a court designates for unpublished status. Generally, they are not considered precedent. However, unpublished opinions may be cited if the opinion has persuasive value on a material issue and no published opinion would serve as well. *See* 8th Cir. R. 28A(I). The Court believes certain unpublished Delaware opinions have persuasive value on material issues in this case, and the Court has found no published opinions that would serve as well. Therefore, where necessary, the Court relies upon select unpublished opinions.

[8]Delaware courts look to Delaware Professional Conduct Rule 1.5(a) to evaluate reasonableness. Rule 1.5(a) states:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

meaning."). The parties do not dispute that "it [has been] adjudged by a court of competent jurisdiction that [Rawlings] has materially breached th[e] Agreement." Thus, in accordance with the Agreement, Matrix, as the non-breaching party, is entitled to recover "reasonable attorneys' fees" and "costs." Rawlings argues that several items requested by Matrix do not constitute reasonable attorneys' fees or costs and thus fall outside the scope of the Agreement. Rawlings's specific objections are considered below.[9]

  1.  *Claims Against K2 & Counts 9 and 10 Against Rawlings*

Matrix seeks fees for all work in this case, including work related to both the claims it brought against K2 and Counts 9 (tortuous interference) and 10 (Florida Deceptive Trade Practices Act) against Rawlings. Rawlings argues that, because the Agreement provides that "the non-breaching party shall be entitled to reasonable attorney's fees and costs from the other party," the Agreement

---

[9] Matrix argues that neither the Agreement nor Delaware law permit the parsing of fees in the manner proposed by Rawlings. First, Matrix argues that the import of the attorneys' fees provision is to deter material breaches of the Agreement and that this purpose would be undermined if the breaching party is permitted to parse the fee request through post-trial critiques of litigation decisions. The Court finds this argument unpersuasive. Rawlings's challenges to the fee request largely concern whether certain fees and costs fall within the scope of Paragraph 7.7. A thorough consideration of these challenges is entirely proper and does not undermine the purpose of the Agreement. Indeed, the Agreement's purpose is fulfilled by closely examining the request to ensure that only those fees and costs falling within the scope of the Agreement are awarded.

Second, Matrix argues that Delaware law mandates that the Court simply perform a "general review" of the fees using Delaware Professional Conduct Rule 1.5(a) to determine if the fees are reasonable. According to Matrix, the exclusion of any category of fee identified by Rawlings is improper under Delaware law. Matrix has not cited any Delaware law which can be read to prohibit this Court from considering the categories of exclusions proposed by Rawlings, and the Court has found none. Thus, the Court finds it is appropriate to consider Rawlings's argument that the requested fee award should be reduced.

Finally, the Court notes that Rawlings has not objected to the hourly rates charged by Matrix's counsel. The Court notes that all of the rates appear reasonable, especially given the experience of counsel.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

cannot be invoked to require either Rawlings or K2 to pay the attorneys' fees Matrix incurred in pursuing its claims against K2. Rawlings also argues that fees for work performed in pursuit of Counts 9 and 10 against Rawlings are not recoverable under the Agreement because these tort and statutory claims are outside the scope of the Agreement. According to Matrix, the tort and statutory claims against K2 and Rawlings arose from the same set of operative facts as the breach of contract claims and should therefore be permitted.

The Agreement clearly provides that a breaching party will pay the attorneys' fees and costs of the non-breaching party. However, the Agreement does not contemplate that the breaching party will be responsible for fees and costs incurred in pursuing claims against an entirely different party. The Agreement specifically states that fees and costs will be awarded if "*one party* has materially breached this Agreement," and further contemplates that the fees and costs will be paid by the "*other party*." Thus, the work performed in pursuit of claims against K2 is outside the scope of the Agreement. Regardless of whether Matrix is correct in contending that it was necessary to bring its claims against K2 at the same time it brought its claims against Rawlings, it is nonetheless true that there is no contractual basis upon which to require either Rawlings or K2 to pay for the fees incurred in pursuit of claims against K2.[10] Under the Agreement, Rawlings is only required to pay for fees Matrix incurred in pursuing claims against Rawlings, the breaching party. The Agreement does not contemplate that Rawlings will pay fees and costs related to claims against its parent, K2. Further,

---

[10]Matrix appears to construe Rawlings's argument with respect to K2 as being based on a contention that the claims against K2 are unrelated to the claims against Rawlings. *See* Pls.' Rep. at 7 ("Rawlings contention that Matrix's tort and statutory claims, whether asserted against Rawlings or against K2, are somehow 'unrelated' within the meaning of *Hensley*, blinks reality."). The issue is not whether the claims against K2 are related, but whether there is a contractual basis upon which the Court can award fees incurred as a result of work on claims directed at K2. The Court has concluded that there is not.

6

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

K2 cannot be required to pay fees absent a statutory or contractual mandate that it do so. K2 is not a signatory to the Agreement and cannot be required to pay on that basis. Thus, the Agreement cannot be invoked to require either Rawlings or K2 to pay the attorneys' fees and costs Matrix incurred in pursuing its claims against K2. The amount sought for time entries by B&I and RPS which include, in whole or in part, work done in pursuit of claims against K2 will be excluded.

The Court likewise concludes that fees incurred in pursuit of Counts 9 and 10 are outside the scope of the Agreement. Pursuant to the Agreement, a non-breaching party can recover attorneys' fees from the breaching party. The clear import of the Agreement is that one party can recover from the other when a breach of the Agreement takes place. The Agreement simply does not authorize the recovery of fees for non-contract claims. The tort and statutory claims against Rawlings contained in Counts 9 and 10 are clearly outside the scope of that which was contemplated by the parties at the time they signed the Agreement. Though it might well have been prudent, or even necessary, for Matrix to bring its tort and statutory claims against Rawlings at the same time as the breach of contract claims, the scope of the Agreement nonetheless is not broad enough to permit Matrix to recover these fees. Thus, the amount sought for time entries by B&I and RPS which include, in whole or in part, work done in pursuit of Counts 9 and 10 against Rawlings will be excluded.[11]

---

[11] Rawlings also argues that Matrix is not entitled to fees for work associated with the pursuit of punitive damages against Defendants. According to Rawlings, many of these fees were incurred in pursuit of punitive damages from K2, and all of Matrix's claims for punitive damages were ultimately unsuccessful. The Court has determined that the work associated with the claims against K2 and Counts 9 and 10 against Rawlings should be excluded because they are outside the scope of the Agreement. Given this Court's decision regarding K2 and Counts 9 and 10, Rawlings's argument regarding punitive damages is now moot.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

2. *Boston Counsel*

Matrix seeks $68,619.50 in attorneys' fees and $604.07 in related expenses for work performed by HAS. HAS is located in Boston, Massachusetts, and performed most of its work in this matter during the early stages of the case. Rawlings argues that the fees and expenses associated with HAS should be excluded because HAS never entered as attorney of record in either the Maine litigation or the litigation in this Court, and HAS's time entries are vague and incomplete such that the Court cannot properly determine the nature of the work performed by HAS or whether HAS's fees are reasonable.

Though HAS may not have entered its appearance as attorney of record in the Maine litigation or the litigation before this Court, there is no dispute that HAS did perform legal work related to the breach of contract at issue here. The Court has examined both the HAS time entries and the affidavit provided by Deborah Benson in support of the time entries ("Benson Aff."). The Court concludes that, while the time entries standing alone are less than a model of clarity, a thorough review of the Benson Affidavit in conjunction with the time entries satisfies the Court that the fees appear reasonable. In her affidavit, Ms. Benson states that HAS acted as Matrix's primary counsel in connection with Matrix's developing dispute with Rawlings arising from the September 2003 acquisition of Worth. Benson Aff. at ¶ 2. Ms. Benson further reveals that her firm continued to play a major role in representing Matrix during the initial phase of the litigation as Matrix sought to enjoin Rawlings from further breaching the Agreement. *Id.* She states that she assisted Mr. Orloff in drafting a letter to Rawlings's president in September 2003, and that, when it became apparent that Rawlings was not going to alter its plans, she asked her partner to examine Matrix's possible claims for breach of the Agreement. *Id.* at ¶ 3. According to her affidavit, in early January 2004, Ms.

8

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Benson contacted B&I to act as litigation counsel and looked to B&I to draft the complaint and motion for preliminary injunction, but continued to take the lead in researching legal issues. *Id.* at ¶ 4. Ms. Benson states that, after the appeal to the First Circuit was briefed and the pending suits were consolidated in this Court, HAS played a greatly reduced role in the litigation. *Id.* at ¶ 6. According to Ms. Benson, HAS billed Matrix for a total of $68,619.50 in attorneys' fees, the vast majority of which were incurred early in the dispute when Matrix was developing and pursuing a strategy of seeking to enjoin Rawlings from breaching the Agreement.[12] *Id.* at ¶ 7.

Rawlings argues that, because the HAS time entries are vague, it is impossible to determine what, if any, portion includes charges for work in connection with claims against K2 and Counts 9 and 10 against Rawlings. The Court agrees that the time entry format makes it difficult to determine the precise nature of tasks undertaken. It does seem clear that at least some time was spent pursuing claims the Court has already determined must be excluded. Specifically, some time entries appear to reflect work done on the tort and statutory claims and on the request for punitive damages.[13] Due to the vagueness of many of the entries, the Court cannot determine in a precise manner how much time HAS spent performing legal work that the Court has concluded is outside the scope of the

---

[12]For the period from September 19, 2003 through May 6, 2004, when briefing ended for the appeal to the First Circuit, HAS billed Matrix $61,109.00 in attorneys' fees. For the period from May 6, 2004 through the conclusion of trial, HAS billed Matrix $7,510.50 in attorneys' fees. Benson Aff. at ¶7.

[13]*See, e.g.*, HAS Entry for Feb. 27, 2004 (Spagnole) ("Conduct legal research regarding unfair, deceptive trade practices under Delaware law"); HAS Entry for March 19, 2004 (Benson) ("Attention to strategy related to the Temporary Restraining Order in the Missouri case based on tort claims"); HAS Entry for March 31, 2004 (Spagnole) ("Conduct legal research regarding award of punitive damages under Delaware law"); HAS Entry for April 1, 2004 (Spagnole) ("Conduct legal research regarding punitive damages; draft legal memorandum regarding same"); HAS Entry for April 12, 2004 (Spagnole) ("Attention to legal memorandum regarding punitive damages regarding breach of contract").

9

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Agreement. After reviewing the relevant time entries and the Benson Affidavit, the Court concludes that it would be futile to attempt to reduce the HAS fees in the same manner as will be done with the B&I and RPS fees (i.e. by excluding those entries referencing, in whole or in part, K2 and Counts 9 and 10 against Rawlings). This would undoubtedly result in an undercounting of the relevant entries to be excluded. Instead, the Court will reduce the HAS attorneys' fees total by twenty percent, which represents the approximate amount of time HAS appears to have devoted to the non-contract claims.

### 3. *Certain Disbursements and Expenses*

Among other items, Matrix seeks (1) $13,885.09 in expenses for attorney travel, (2) $1,417.99 for express mail charges, and (3) $89.91 for a conference call, all of which were charged by B&I to Matrix. Rawlings objects to these particular items, arguing that they should not be included in any amount awarded to Matrix.

Matrix contends that these items are recoverable as "attorneys' fees" pursuant to the Agreement. Attorneys' fees are generally defined as those fees charged to a client for services performed. *Black's Law Dictionary* 614 (6th ed. 1990). Matrix contends that this term necessarily includes reasonable out-of-pocket expenses such as those at issue here, and Matrix directs the Court to several cases in which courts have so construed the term. *See Pinkham v. Camex, Inc.*, 84 F.3d 292, 295-96 (8th Cir. 1996) (costs for long distance, fax, messenger, and express mail are "reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys" and should be included as part of statutory attorneys' fees award); *Neufeld v. Searle Lab.*, 884 F.2d 335, 342 (8th Cir. 1989); *Emmenegger v. Bull Moose Tube Co.*, 33 F.Sup2d 1127, 1133 (E.D. Mo. 1998) (explaining principles and citing cases). *See also Williams v. Conagra Poultry Co.*, 113 Fed. Appx. 725, 728 (8th Cir. 2004) (unpublished) (attorney travel expenses are part of reasonable attorneys' fee).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Rawlings argues that the Court should give the term "attorneys' fees" its plain meaning and decline Matrix's efforts to expand the term to include disbursements and expenses.

Matrix concedes that there appears to be no Delaware case addressing this issue, and the Court has found none. The Court, however, does find the *Pinkham* and *Neufeld* courts' reasoning to be persuasive and concludes that the term "reasonable attorneys' fees" is properly construed to include those expenses that are of the kind normally charged to clients by attorneys. Though the cases to which the Court looks for guidance involve statutory fee-shifting provisions, the Court finds no reason that these well-reasoned opinions should not inform this Court's analysis of the contractual provision at issue here. The cases cited by Rawlings do not demand a contrary interpretation.[14]

The mail charges and conference call constitute expenses normally charged by attorneys to their clients. These items appear to be reasonable charges, and they fall within the scope of the Agreement. Thus, they will be allowed. However, the Court does not reach the same conclusion with regard to the $13,885.09 in attorney travel expenses charged by B&I. The travel expenses

---

[14] Rawlings points to *Brandin v. Gottlieb*, 2000 WL 1005954 (Del.Ch. 2000) (unpublished), a case in which the court awarded all reasonable attorneys' fees and expenses where the contract provision provided the prevailing party could recover "all of its reasonable legal fees and disbursements." *Id.* at *28. While it is true that the Agreement at issue here does not include the terms "disbursement" or "expenses," it does not necessarily follow that these items are not includable as "attorneys' fees."

The parties appear to agree that the items are not recoverable as "costs." *See Comrie v. Enterasys Networks, Inc.*, 2004 WL 936505, at *4-5 (Del. Ch. 2004) (unpublished) (interpreting contract term "costs" in a manner consistent with state law, and explaining that, under Delaware law, costs are defined more narrowly than expenses and relate to those charges necessarily incurred in the assertion of rights in court); *id.* at *4 (Delaware courts have disallowed certain items as costs including photocopying, transcripts, travel expense, and computer research); *All Pro Maids, Inc. v. Layton*, 2004 WL 3029869, at *3-4 (Del. Ch. 2004) (unpublished) ("court costs" construed to have ordinary meaning and to exclude costs not directly related to interactions with court; excluding express mail charges, long distance telephone charges, photocopying, computer research, litigation support, expert fees, and transcript costs).

11

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

represent airfare to and from Maine to St. Louis for depositions, court hearings, and the trial, and to and from California for depositions. Brann Aff. at ¶ 11. The Court is unable to evaluate the reasonableness of these expenses because Matrix has failed to submit documentation, other than B&I's own invoices, which might demonstrate that the cost of the travel was reasonable. Therefore, the Court will exclude the $13,885.09 for B&I's attorney travel.

    4.  *Injunctive Relief*

  Matrix seeks fees related to work done in connection with its pursuit of injunctive relief. Matrix contends that it was reasonable to pursue a strategy of seeking a preliminary injunction to enjoin Rawlings's breaches of contract before they could substantially harm Matrix's business. Matrix further states that much of the work done in developing the request for injunctive relief became the basis for counsels' understanding of the Agreement, the nature of Matrix's business, and the relevant background that informed the entire litigation. Rawlings objects to the inclusion of these fees, arguing that the Agreement does not require Rawlings to pay for Matrix's pursuit of injunctive relief.

  The Court concludes that Matrix's pursuit of injunctive relief was directly related to Rawlings's breach of the Agreement and falls within the scope of the Agreement. The Agreement stipulates that one party will pay fees and costs if the other party is found to have breached the Agreement. Matrix's request for injunctive relief was undertaken in an effort to enjoin a breach of the Agreement. Moreover, the pursuit of injunctive relief appears to have been a reasonable litigation strategy, even if ultimately unsuccessful. Finally, it appears that the work done in preparation for the requested injunctive relief laid the groundwork for Matrix's breach of contract damages claims. Matrix's pursuit of injunctive relief was related to the breach of contract claims and falls within the

12

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

scope of the Agreement. Therefore, these fees will not be excluded.

     5.    *Maine Trial Counsel and Litigation*

Rawlings contends that Matrix is not entitled to fees or costs related to Matrix's decision to employ Maine trial counsel and to initiate litigation there. According to Rawlings, Matrix's decision to retain lead litigation counsel in Maine was unreasonable due to the fact that Maine is thousands of miles from the parties, the witnesses, and the Court. Rawlings also argues that it was unreasonable for Matrix to initiate suit in Maine because that state bears no relation to the parties or this dispute. According to Rawlings, Matrix's attempt to litigate in Maine was unreasonable, and any fees associated with its opposition to Rawlings's motion to transfer this case to this Court should not be granted. The Court finds these arguments unpersuasive. Matrix's decision to bring suit in Maine was reasonable, especially considering that it was represented by Maine counsel at the time and that it sought to obtain relief as quickly as possible so as to minimize potential harm to its business. The Court also notes that nothing in the Agreement indicates that the parties are required to bring suit in any particular forum, and nothing in the Agreement prohibits Matrix from hiring counsel of its choosing. The Court will not exclude fees incurred by Matrix in opposing the motion to transfer the case from Main to Missouri, and the Court will not exclude fees incurred by Matrix for the travel time of its Maine trial counsel.[15]

    B.    <u>Supplemental Request</u>

In its Supplemental Request, Matrix states that it is entitled to fees related to (1) the

---

[15]As Matrix points out, even if it had hired counsel from its home state of Florida, Florida counsel presumably would have been required to travel no less than Matrix's lead counsel in Maine. The travel time fees appear to be entirely reasonable. Matrix's Maine counsel billed for travel time not spent working on other matters at one-half its standard hourly rate.

13

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

preparation of Matrix's Bill of Costs and its Motion for Reasonable Attorneys' Fees and Costs; and (2) Matrix's opposition to Rawlings's post-trial motions. Matrix requests a total of $31,279.00 in attorneys' fees for this work. Rawlings has not objected to Matrix's Supplemental Request. Thus, the Court will award Matrix $31,279.00 for B&I's post-trial work.

        C.        <u>Motion for Bill of Costs</u>

In its Motion for Bill of Costs, Matrix requests that the Court tax costs in the amount of $13,811.18 against Defendants pursuant to 28 U.S.C. § 1920. "[C]osts other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d). Defendants have not objected to Matrix's Motion for Bill of Costs. Therefore, the Court will tax $13,811.18 against Defendants and in favor of Matrix.

## III.    CONCLUSION

Pursuant to 28 U.S.C. § 1920, the Court will tax costs against Rawlings and K2 and in favor of Matrix in the amount of $13,811.18. Pursuant to the Agreement between Rawlings and Matrix, the Court will award Matrix: (1) $31,279.00 for post-trial work performed by B&I; (2) $392,162.25 in attorneys' fees for work performed by B&I, less the fees for work connected with K2 and Counts 9 and 10 against Rawlings; (3) $1,417.99 for express mail charges from B&I; (4) $89.91 for a conference call by B&I; (5) $49,533.50 in attorneys' fees for work performed by RPS, less the fees for work connected with K2 and Counts 9 and 10 against Rawlings; (6) $256.55 for express mail charges from RPS; (7) $168.80 for copying charges from RPS; (8) $54,895.60 in attorneys' fees for work performed by HAS; (9) $500.13 for long distance charges by HAS; (10) $103.94 for express delivery charges by HAS; and (11) $1,500.00 for time spent by Donna Beck Smith in court on May 5, 2005.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

So that the Court may determine the proper amount of attorneys' fees to award for work performed by B&I and RPS, Rawlings shall submit to the Court its calculations setting forth the total fees recoverable under items (2) and (4) above, providing not only the total amount recoverable under items (2) and (4), but also demonstrating how those totals are calculated.[16] As the Court has determined, those time entries from B&I and RPS which include work undertaken in pursuit of claims against K2 and Counts 9 and 10 against Rawlings should be excluded. Matrix shall then file any objections to Rawlings's calculations and shall also provide the Court with a proposed order regarding the post-judgment interest it contends is due on the final award. Matrix's Motion for Attorneys' Fees and Costs shall remain pending before this Court until said filings are received, at which time the Court will enter its order disposing of said Motion.

Accordingly,

**IT IS HEREBY ORDERED** the Plaintiff's Motion for Bill of Costs [doc. #216] is **GRANTED**. The Clerk of the Court shall tax costs in favor of Plaintiff Matrix and against Defendants Rawlings and K2 in the amount of $13,811.18.

**IT IS FURTHER ORDERED** that, no later than **October 21, 2005**, Rawlings shall submit to the Court its calculations setting forth the total portion of recoverable attorneys' fees for the work performed by Brann & Isaacson and Rabbitt, Pitzer, & Snodgrass, as described herein.

---

[16]Rawlings indicates in its Opposition to the Motion for Attorneys' Fees and Costs that it has calculated the amounts to be excluded, and Rawlings provides these total amounts. However, Rawlings has not sufficiently demonstrated how its totals were calculated. The Court simply requests that Rawlings provide supporting detail for its calculations so that Matrix may have a fair opportunity to dispute the calculations and so that the Court may properly evaluate Rawlings's totals.

15

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**IT IS FURTHER ORDERED** that, no later than **October 28, 2005**, Matrix shall file any objections to Rawlings's calculations and shall also provide the Court with a proposed order regarding the post-judgment interest it contends is due on the final award, as described herein.

Dated this 14th day of October, 2005.

*E. Richard Webber*

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com